IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HERMILO PALMERIN-ZAMUDIO,

    Defendant.

No. CR 12-00532 WHA

**ORDER DENYING MOTION TO DISMISS AND SETTING STATUS CONFERENCE**

## INTRODUCTION

In this Section 1326 prosecution, defendant moves to dismiss on the ground that the underlying removal proceeding was unfair. For the reasons below, the motion to dismiss is **DENIED**.

## STATEMENT

Defendant Hermilo Palmerin-Zamudio is a citizen of Mexico. He first came to the United States when he was a teenager and became a lawful permanent resident in 1984. In 1994, defendant pled guilty to kidnapping in violation of Section 207(a) of the California Penal Code and was sentenced to three years in prison.

In 1999, defendant was charged with possession of a controlled substance under California Health and Safety Code Section 11377(a). The charging document alleged that defendant had possessed "a controlled substance, to wit, methamphetamine" (Kang Decl. Exh. B). Defendant pled guilty and was sentenced to 100 days in custody. Upon his release, defendant was transferred to the custody of INS. Defendant was served with a notice to appear that charged him with removability based on both his kidnapping and possession convictions. The notice to appear stated:

> You were, on April 25, 2000, convicted in the Superior Court of
> California, in for [*sic*] the County of Sonoma, for the offense of
> Possession of a Controlled Substance, to wit: Methamphetamine, in
> violation of Section 11377(a) of the California Health and Safety
> Code;
>
> You were, on April 4, 1994, convicted in the Superior Court of
> California, in for [*sic*] the County of Sonoma for the offense of
> Kidnap, in violation of Section 207(a) of the California Penal Code . . .

(Kang Decl., Exh. 3 at p.3).

To represent him in the removal proceedings, defendant retained an attorney, Donald Smith. Attorney Smith filed a motion for a change of venue from Arizona to California, which motion noted that defendant "appears to be eligible to apply for Cancellation of Removal." The change-of-venue motion was denied and no cancellation-of-removal papers were filed. On November 1, 2000, defendant's hearing before the immigration judge was held. Defendant alleges that Attorney Smith never spoke with defendant to explain the proceedings and, as Attorney Smith stated at the hearing, had not read the notice to appear prior to the hearing. Attorney Smith did not attend the hearing in person, but was contacted via telephone by the immigration judge. The immigration judge asked whether Attorney Smith was ready to "tak[e] pleadings on the case." Attorney Smith responded that he had not seen the notice to appear, but that he would be prepared to do so if the notice was read to him over the phone. The immigration judge then asked a series of questions based on the factual allegations and charges in the notice to appear, to which Attorney Smith responded. Attorney Smith affirmatively admitted that defendant had been convicted of the two convictions charged in the notice to appear and admitted that defendant conceded removability on one or both of the charges. Specifically, the unofficial transcript of the removal hearing provided by defendant reflects the following exchange:

> Immigration Judge: On April 25, 2000, in the Superior Court of the State of California, in for the County of Sonoma, was your client convicted of simple possession of methamphetamines?
>
> Attorney Smith: Yes.
>
> Immigration Judge: April 4, 1994, in the Superior Court, State of California, in for the County of Sonoma, was your client convicted of a crime called kidnapping?
>
> Attorney Smith: What year was that?

>Immigration Judge: April 4, 1994.
>
>Attorney Smith: Yes.
>
>Immigration Judge: Was he sentenced to three years in prison as a result of that conviction?
>
>Attorney Smith: Yes he was.

(Defendant's Exh. 8 at p.3). Defendant was present at the hearing and had the benefit of an interpreter.

The immigration judge ordered that defendant be deported to Mexico, finding that no relief from deportation was available to defendant. At the hearing, Attorney Smith expressly reserved the right to appeal. The immigration judge asked defendant whether he understood that his attorney had reserved the right to appeal the immigration judge's decision, to which defendant responded "yes." Defendant did not appeal the deportation order. By letter dated November 10, 2000, it appears that defendant's wife terminated Attorney Smith's legal services (Defendant's Exh. 9). Defendant was deported.

In July 2012, defendant was charged with illegal re-entry. Defendant now moves to dismiss the indictment. After full briefing and a hearing, further briefing was requested regarding defendant's Section 11377(a) conviction. Having considered the parties' arguments, briefs, and the record before the Court, defendant's motion to dismiss is hereby **DENIED**.

**ANALYSIS**

**1. LEGAL STANDARD.**

In a criminal prosecution pursuant to Section 1326, "the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). To succeed on his motion to dismiss the re-entry charge, defendant must establish that (1) he exhausted any administrative remedies that may have been available to seek relief from the removal order, (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) the entry of the removal order was "fundamentally unfair." 8 U.S.C. 1326(d). Defendant "can succeed in this collateral challenge only if he is able

3

to demonstrate that: (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998) *overruled on other grounds by United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir.2002) (en banc).

The government argues that defendant has not met the exhaustion requirement, as he did not make any further application to the immigration court contesting the validity of the removal order or seeking to reopen immigration proceedings. Nor did defendant appeal the removal order. Defendant claims he is exempt from the exhaustion requirement because of the immigration judge's failure to advise him of available relief and his counsel's ineffective assistance. Our court of appeals has held that an alien may be exempted from the exhaustion requirement in cases where an alien was eligible for relief from removal, and the immigration judge failed to so advise the alien of the possibility of eligibility for relief. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049-50 (9th Cir. 2004). In order to "establish the 'fundamentally unfair' prong of a Section 1326 collateral attack," however, the alien must also demonstrate that he suffered prejudice as a result of the due process violations. *United States v. Gonzalez*, 450 Fed. App'x 583, 586 (9th Cir. 2011); *Ubaldo-Figueroa*, 364 F.3d at 1050.

This order need not determine whether defendant is excused from the exhaustion requirement based on either his counsel's allegedly deficient representation, the immigration judge's failure to inform him of available relief, or both, because this order finds that defendant has not established prejudice as a result of any alleged due process violation in defendant's removal proceedings. As discussed below, defendant could not have avoided deportation due to his two convictions. As defendant was deported on both the possession and kidnapping convictions, this order considers each in turn.

**2. THE POSSESSION CONVICTION.**

To consider the most recent conviction first, defendant contends that the immigration judge, and his attorney, erred in finding that he was deportable based on his conviction for violation of California Health and Safety Code Section 11377(a). Our court of appeals has held that a Section 11377(a) conviction is not categorically a "controlled substance offense" under

Immigration and Naturalization Act Section 237(a)(2)(B)(i) because the state statute includes substances not included on the federal list of controlled substances. *See Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1078 (9th Cir. 2007). Even though a conviction under Section 11377(a) is not categorically a deportable offense, however, it may qualify as such under the modified-categorical approach. In applying the modified-categorical approach, a court conducts a "limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive." *Li v. Ashcroft*, 389 F.3d 892, 896 (9th Cir. 2004) (quoting *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir.2002)).. Where the conviction is based on a plea, a court may review the charging document, transcript of the plea colloquy, plea agreement, "and comparable judicial record of this information." *Young v. Holder*, No. 07-70949, 2012 WL 4074668 at *4, — F.3d — (9th Cir. Sept. 17, 2012).

Defendant contends that the immigration judge erred in applying the modified-categorical approach. Defendant claims there was insufficient evidence in the record before the immigration judge to support the finding that defendant pled guilty to and was convicted of possession of methamphetamine, rather than merely possession of a prohibited substance. The documents submitted by the government from defendant's immigration "A-file" include two items related to the conviction: the charging document and a sentencing form (Kang Decl. Exh. B). The charging document charged defendant with a felony violation of California Health and Safety Code Section 11377(a) for unlawful possession of "a controlled substance, to wit, methamphetamine" and, in count two, a misdemeanor violation of Section 11377(b) for possession of marijuana. Defendant's sentencing form identified the two charges against defendant, referencing the felony count for violation of Section 11377(a) and the second count for misdemeanor violation of Section 11357(b). The sentencing form also stated that count two was dismissed, and that defendant was sentenced to serve 100 days and pay restitution and other fees (*ibid.*).

Defendant argues that this record was insufficient to support the immigration judge's conclusion that his conviction was for methamphetamine. *First*, defendant contends that the charging document, standing alone, could not establish whether defendant actually pled guilty to possession of methamphetamine. *See, United States v. Vidal*, 504 F.3d 1072, 1088 (9th Cir. 2007). *Second*, defendant argues that, because the sentencing form did not contain the phrase "as charged in the information," it was insufficient to establish that defendant's conviction had been for methamphetamine. *See id.* at 1087 ("when the record of conviction comprises only the indictment and the judgment, the judgment must contain the critical phrase 'as charged in the Information.'")

This order need not determine whether the charging document and sentencing form, by themselves, were sufficient to establish that defendant was convicted for possession of methamphetamine. Defendant, through his counsel, expressly admitted the methamphetamine charge at the deportation hearing. The immigration judge asked, "[o]n April 25, 2000, in the Superior Court of the State of California, in for [*sic*] the County of Sonoma, was your client convicted of simple possession of methamphetamines?" Attorney Smith responded "yes" (Defendant's Exh. 8 at 3). *Defendant does not now contend that the statements of his attorney, made on his behalf, were factually incorrect, and does not provide any facts that would contradict the admissions*.

In a recent decision, our court of appeals addressed whether a conviction based on a possession charge rendered an alien deportable. The court of appeals considered whether the immigration judge erred in relying on counsel's statements admitting that his client's prior conviction for possession had been for cocaine. The court of appeals held that counsel's statement admitting the allegation of conviction for cocaine possession was sufficient to establish deportability, stating that "admissions by an alien to facts alleged in [a notice to appear], and concessions of removability, made in the 8 C.F.R. § 1240.10(c) 'pleading stage' of removal proceedings may be relied on by an [immigration judge]." *Perez-Mejia v. Holder,* 663 F.3d 403, 410 (9th Cir. 2011) (citations omitted). The immigration judge is entitled to rely on statements and admissions made by the alien or his counsel at the pleading stage of the

6

deportation proceedings. If the statements and admissions are sufficient to establish removability, "no further evidence concerning the issues of fact admitted or law conceded is necessary." *Id.* at 414. "Indeed, an alien's concession of removability or admission of facts establishing removability, if accepted by the [immigration judge], completely 'relieve[s] the government of the burden of producing evidence.'" *Pagayon v. Holder*, 675 F.3d 1182, 1189 (9th Cir. 2011) (quoting *Perez-Mejia,* 663 F.3d at 416). The holding in *Perez-Mejia* has been extended to apply to admissions by an alien made in the pleading stage of removal proceedings even where the alien was proceeding pro se. *See Pagayon*, 675 F.3d at 1190. In defendant's case, the immigration judge was entitled to rely on the express admission of defendant's attorney, particularly where, as here, the admission was consistent with the documents in the record related to defendant's possession conviction. The government was thus relieved of its burden of proof on that issue, and no further evidence was required to be examined.

Defendant contends that he was denied effective assistance of counsel because Attorney Smith (1) did not appear in person at court, (2) did not speak with defendant "to explain to his client what was going on in the proceedings," and (3) "apparently never even bothered to read the charges of removability" (Br. at 3) (emphasis removed). While defendant now argues that his counsel provided ineffective assistance, he is notably silent on whether any alleged ineffective assistance resulted in actual prejudice. That is, while defendant "need not establish that he definitely would have received immigration relief," he must demonstrate that he had "plausible grounds for receiving such relief." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011).

Based on the record currently before the Court, prejudice cannot be inferred. Attorney Smith admitted the facts of the possession conviction to the immigration judge, upon which the immigration judge was entitled to rely. Now, many years have passed, and Attorney Smith's admissions remain unchallenged on the record. Defendant has not offered any facts that would contradict the admission regarding the methamphetamine possession conviction. Nor has defendant established that the outcome of the proceedings would likely have been different had he been represented by allegedly effective counsel. This order need not decide whether Attorney

7

Smith's legal representation constitutes ineffective assistance of counsel, as the fact remains that defendant has not carried his burden of demonstrating prejudice.

Although defendant has failed to establish that he was not deportable on the possession conviction, this does not end the inquiry. If defendant had no other convictions on which he could be deported, he may have been eligible for cancellation-of-removal relief from deportation. Cancellation-of-removal relief was not available to defendant, however, because he was convicted of an aggravated felony for which he was deportable, namely the 1994 kidnapping conviction, to which this order now turns.

### 3. THE 1994 KIDNAPPING CONVICTION.

The immigration judge also found that defendant was deportable based on his earlier kidnapping conviction. Defendant argues that the immigration judge erred in finding that his 1994 conviction for kidnapping under California Penal Code Section 207(a) rendered him deportable. Defendant contends that at the time of his hearing, kidnapping did not qualify as a crime of violence under then-existing authority. Defendant further argues that, because he was not removable at the time of his conviction in 1994, intervening changes in the immigration laws could not be applied retroactively to render him deportable on that conviction in 2000. As discussed below, this order disagrees.

*First,* at the time of defendant's hearing in 2000, kidnapping was considered a crime of violence in the Ninth Circuit under California's statute as well as similar state and federal laws. In a recent decision, our court of appeals held that kidnapping has historically been considered a crime of violence that involves a substantial risk of physical force under 18 U.S.C. Section 16(b). *Delgado-Hernandez v. Holder*, No. 08-70789, 2012 WL 4784162, — F.3d — (9th Cir. Oct. 9, 2012). There, the court of appeals specifically considered whether kidnapping under Section 207(a) constitutes a crime of violence. Noting that prior decisions have held that kidnapping by force or fraud presents a serious risk of physical injury, *United States v. Lonvzak*, 993 F.2d 180, 183 (9th Cir. 1993), the court of appeals reviewed its prior decisions, as well as those of other circuits, finding that "numerous courts have held that kidnapping generally presents a risk of substantial force. Congress, the Sentencing Commission, and forty

8

jurisdictions have concluded, consistent with historical practice, that kidnapping is a violent crime." *Id.* at *7. This order finds significant the fact that the court of appeals held that, in keeping with its earlier decisions as well as historical understanding, the ordinary case of kidnapping under Section 207(a) presents a substantial risk of force. While defendant argues that California state court decisions after 2000 may have undermined this understanding, the immigration judge did not err in finding that a conviction for kidnapping under Section 207(a) categorically qualified as a crime of violence.

*Second,* at the time of defendant's conviction in 1994, the conviction could not have rendered him deportable because a crime of violence constituted an "aggravated felony" for deportation purposes only if it also resulted in a conviction of at least five years. Intervening changes in the law between defendant's conviction in 1994 and removal proceedings in 2000, however, altered the applicable definitions and rendered him deportable based on the 1994 conviction.

In 1996 and 1997, the Antiterrorism and Effective Death Penalty Act and Illegal Immigration Reform and Immigrant Responsibility Act went into effect, as part of a "sweeping program of immigration reform." Prior to 1996, the definition of an "aggravated felony" included violent crimes for which the sentence imposed was "at least 5 years." 8 U.S.C. 1101(a)(43)(F). In September 1996, IIRIRA amended the definition of an aggravated felony to include "a crime of violence . . . for which the term of imprisonment is at least one year." 8 U.S.C.A. 1011(a)(43)(F); IIRIRA § 321(a)(3).

Defendant argues that the retroactive application of the expanded definition of "aggravated felony" violates his due process rights. This argument is unavailing. *It is well-settled that the definitional provision of Section 321(a) applies, regardless of when defendant's conviction was entered.* Our court of appeals has clearly stated that "it is settled law that the effective-date provision of the *definitional* statute, IIRIRA § 321, which defines certain crimes as aggravated felonies, applies *regardless* of the date of the commission of the crime. On that *definitional* issue, our law is clear." *Lopez-Castellanos v. Gonzales*, 437 F.3d 848, 852 (9th Cir. 2006) (citing *Aragon-Ayon v. INS,* 206 F.3d 847, 853 (9th Cir.2000)) (emphasis in original); *INS*

9

*v. St. Cyr,* 533 U.S. 289, 319 (2001). The definition of "aggravated felony" applies to defendant's 1994 kidnapping conviction, such that defendant was deportable on the conviction at the time of his hearing.

Having determined that the immigration judge did not err in finding defendant was removable, this order now addresses whether the removal proceedings were rendered "fundamentally unfair" by any failure to inform defendant of his entitlement to seek relief from deportation.

### 4. "SUBSTANTIVE IMMIGRATION CONSEQUENCES" AND DISCRETIONARY RELIEF.

Under the AEDPA and IIRIRA amendments, the consequences of conviction of an "aggravated felony" extend further than merely establishing deportability. Whereas aliens convicted of aggravated felonies were able to apply for discretionary relief under former INA Section 212(c), IIRIRA repealed Section 212(c) and replaced it with a more stringent "cancellation of removal" provision. *See* 8 U.S.C. Section 1229b(b)(1). Under the 1996 IIRIRA provision, an alien convicted of an aggravated felony would not be eligible for cancellation of removal. While the definitional provision of IIRIRA clearly applies retroactively, the Supreme Court and our court of appeals have held that the "substantive immigration consequences" must also be considered. *See Lopez-Castellanos*, 437 F.3d at 853 (citing *St. Cyr*, 533 U.S. at 317-20).

In *St. Cyr*, the Supreme Court addressed whether Section 304(b) of the IIRIRA, which repealed INA Section 212(c) and replaced it with the narrower form of relief of cancellation of removal, applied retroactively. *St. Cyr,* 533 U.S. at 314-26. St. Cyr was an alien who pled guilty to an aggravated felony that made him deportable. Under the law applicable at the time of his plea in 1996, St. Cyr would have been eligible to apply for a discretionary waiver of deportation under INA Section 212(c). By the time of his removal proceedings in April 1997, however, both AEDPA and IIRIRA had gone into effect. The Supreme Court held that IIRIRA Section 304(b) could *not* be applied retroactively to bar the alien from applying for relief under INA Section 212(c) because (1) Congress had not expressed a clear statement that Section 304(b) have retroactive effect, and (2) retroactive application of Section 304(b) would upset the likely expectations informing the petitioner's decision to enter into a plea bargain. *Id.* at 321, 326. The

10

Supreme Court held that Section 212(c) relief was available for aliens who, like St. Cyr, would have been eligible for Section 212(c) relief at the time of their plea.

Defendant argues that *St. Cyr* applies in this case, such that he was entitled to seek relief under INA Section 212(c). Moreover, defendant argues that the rationale of *St. Cyr* should apply to other forms of relief available to aliens who had been convicted of crimes that did not qualify as aggravated felonies prior to the effective dates of AEDPA and IIRIRA. Defendant contends that he should not be denied the ability to seek relief that would have been open to him had the definitional changes to "aggravated felony" not foreclosed relief at the time of his deportation hearing. To put it another way, defendant claims that, despite the fact that changes in the immigration laws redefined his 1994 conviction as an aggravated felony, he was entitled in 2000 to seek certain forms of relief from deportation that were then-available to aliens who had not been convicted of aggravated felonies — namely cancellation of removal and voluntary departure. Defendant's arguments regarding the availability of relief under voluntary departure, Section 212(c), and cancellation-of-removal relief are examined below.

### A. Voluntary departure.

Defendant argues that he was entitled to apply for voluntary departure, a form of discretionary relief. Defendant does not specify whether he claims he should have been eligible for voluntary departure under the pre-IIRIRA provision, Section 1254(e), or under the post-IIRIRA provision of Section 1229c. Under the former, defendant would not be eligible for relief because, as discussed above, he was convicted of a crime involving a controlled substance. An alien who has been "convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance" would not be eligible for relief under Section 1254(e). *See also, Ying v. I.N.S.*, 931 F.2d 899 (9th Cir. 1991).

Under the post-IIRIRA Section 1229c, voluntary departure may be granted if the immigration finds, among other requirements, that the "alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure." 8 U.S.C. 1229c(b)(1). The statute further defines the term "person of good moral character" as excluding any alien who was "convicted of, or who admits having committed, or

11

who admits committing acts which constitute the essential elements of" a violation of any law or regulation "relating to a controlled substance." 8 U.S.C. 1182(a)(2)(A).

Defendant was statutorily barred from seeking voluntary removal because he was convicted of and admitted to having committed a violation of a law relating to possession of a controlled substance, namely methamphetamine. Thus, the immigration judge's failure to inform defendant of this form of deportation relief was not prejudicial, because defendant would not have been eligible in any event.

### B. Section 212(c) relief.

Defendant could, however, have applied for relief under INA Section 212(c). Because he pled guilty in 1994 to what was then not definitionally an "aggravated felony," defendant had "two bulwarks" to protect himself against deportation. *United States v. Leon-Paz*, 340 F.3d 1003, 1006 (9th Cir. 2003). "The first was the fact that he had pled to a crime that was below the aggravated felony threshold, and the second was § 212(c) itself in case the definition of aggravated felony changed as it often had and has." *Ibid.* Our court of appeals has held that in circumstances such as defendant's, Section 212(c) relief remains available because "the provision which removed § 212(c) relief was not made fully retroactive." *Ibid.* Defendant falls within the scope of the rule, which applies to aliens who were convicted of crimes prior to the effective dates of AEDPA and IIRIRA that were later defined as aggravated felonies by the relevant amendments. Controlling precedent makes clear that aliens in defendant's position are entitled to seek relief under Section 212(c). As discussed below in Section 4D, defendant must still demonstrate that the failure to inform him of his ability to seek Section 212(c) relief resulted in prejudice.

### C. Cancellation of removal.

Defendant's position regarding the availability of cancellation-of-removal relief is supported by the decision of our court of appeals in *Lopez-Castellanos v. Gonzales*, 437 F.3d 848 (9th Cir. 2006). In that case, petitioner Lopez-Castellanos pled guilty to one count of lewd or lascivious acts with a child. At the time of his conviction, the act was not considered an "aggravated felony" under the immigration laws. In 1999, removal proceedings were initiated

against Lopez-Castellanos. He conceded removability but requested cancellation of removal or, in the alternative, voluntary departure. Our court of appeals considered whether Lopez-Castellanos was eligible for a "discretionary waiver of deportation" under the new cancellation-of-removal provision. Reviewing the history of the immigration laws, the court of appeals noted that IIRIRA eliminated a certain form of relief known as "suspension of deportation" under 8 U.S.C. Section 1254 and replaced it "with a similar (though somewhat more burdensome) kind of relief known as 'cancellation of removal.'" *Id.* at 851. "IIRIRA § 304(a)(3) repealed suspension-of-deportation relief and essentially replaced it with a form of cancellation-of-removal relief, codified at 8 U.S.C. § 1229b(b)." Applying the retroactivity analysis from *St. Cyr,* the court of appeals addressed the question of "whether the substantive immigration consequences of IIRIRA" applied to petitioner. *Id.* at 852-54. The court of appeals determined that Lopez-Castellanos had been eligible to apply for cancellation of removal in his removal proceedings because "[t]o deprive Lopez-Castellanos of eligibility for discretionary relief would produce an impermissibly retroactive effect for aliens who, like Lopez-Castellanos, were eligible for a discretionary waiver at the time of the plea." *Id.* at 853.

In this case, defendant, like the alien in *Lopez-Castellanos*, pled guilty to a pre-IIRIRA conviction that was subsequently redefined as an aggravated felony. As in *Lopez-Castellanos*, defendant's removal proceedings took place after AEDPA and IIRIRA had gone into effect. Thus, cancellation of removal *was* a form of deportation relief that was available to defendant, despite the fact that his 1994 kidnapping conviction had been redefined as an aggravated felony by that time.

### D. Prejudice.

This does not mean, however, that defendant is entitled to dismissal of the indictment. Defendant must still show prejudice. The government concedes that defendant fits within the *St. Cyr* rule such that he could have sought relief under Section 212(c) for the 1994 kidnapping conviction. It argues, however, that the immigration judge's failure to inform defendant was not prejudicial because defendant would still have been deportable based on his two convictions. In a case involving an alien convicted of two aggravated felonies prior to the enactment of IIRIRA

13

as well as a post-IIRIRA offense, our court of appeals stated "[b]y enacting § 1229b(c)(6), Congress made its intention clear: an alien who has received § 212(c) relief — at any time — cannot also receive § 1229b relief. [The alien] was eligible for one form of relief or the other, but not both." *Garcia-Jimenez v. Gonzales*, 488 F.3d 1082, 1086 (9th Cir. 2007); *see also Becker v. Gonzales*, 473 F.3d 1000, 1003-1004 (9th Cir. 2007).

In defendant's reply brief, and at the hearing, counsel for defendant conceded that the government's interpretation of the law was correct — defendant could not have avoided deportation if he was deportable on both his pre-IIRIRA aggravated felony conviction and his post-IIRIRA conviction for possession of a controlled substance (Reply Br. at 2). Defendant is thus unable to demonstrate that the outcome of the removal proceedings would likely have been different had he been informed of relief for which he could have applied. Even if he qualified for relief under Section 212(c) to waive his 1994 felony conviction, he would not also have been eligible for cancellation of removal for his possession conviction.

## CONCLUSION

The immigration judge did not err in finding that defendant was deportable based on his two convictions for kidnapping and possession of a controlled substance. Although the immigration judge did not inform defendant that he may have been eligible to apply for certain forms of discretionary relief, defendant has failed to demonstrate prejudice as a result of any such omission. Defendant's motion to dismiss is therefore **DENIED**.

A status conference is hereby set for **OCTOBER 31, 2012 AT 2 P.M.**

**IT IS SO ORDERED.**

Dated: October 30, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE